<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATLANTIC SPINE CENTER, LLC, on the assignment of M.K., <br><br> Plaintiff, <br><br> v. <br><br> DELOITTE, LLP GROUP INSURANCE PLAN *et al.*, <br><br> Defendants. | Case No. 2:23-cv-00614 (BRM) (JBC) <br><br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Deloitte, LLP Group Health Insurance Plan's ("Defendant") Motion to Dismiss (ECF No. 11) Plaintiff Atlantic Spine Center, LLC's ("Plaintiff") Amended Complaint (ECF No. 10) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed an opposition on August 22, 2023. (ECF No. 13.) Defendant filed a reply on September 11, 2023. (ECF No. 16.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendant's Motion to Dismiss (ECF No. 11) is **GRANTED** and Plaintiff's Amended Complaint is **DISMISSED WITHOUT PREJUDICE** with leave to amend.

**I.     BACKGROUND**

    **A.     Factual Background**

For the purpose of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v.*

*Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This matter arises from Plaintiff's lumbar spine surgery ("Surgery") on the insured, M.K., on July 17, 2020. (ECF No. 10 ¶ 7.) M.K. is a beneficiary, member, and/or insured of Defendant's health and welfare benefits plan ("Plan") and is entitled to benefits under the Plan. (*Id.* ¶ 8.) On June 18, 2020, M.K. purportedly "executed an assignment of benefits in favor of Plaintiff assigning all her rights, interests and benefits under her health and welfare plan to Plaintiff." (*Id.* ¶ 9.) On April 26, 2021, Defendant paid $4,106.10 directly to Plaintiff in compensation for the Surgery, with an outstanding balance of $155,893.90 remaining from Plaintiff's requested reimbursement. (*Id.* ¶ 17, 19.) Plaintiff challenged the payment amount through the Plan's administrative appeal procedures, which were exhausted on May 20, 2021. (*Id.* ¶ 18.) On July 26, 2021, HCFA 1500 claim forms were sent to Defendant for reimbursement of the Surgery provided to M.K. on July 17, 2020. (*Id.* ¶ 15.) The HCFA 1500 form had box 27 checked, indicating the beneficiary had assigned the claim for benefits to the medical provider, in this case the Plaintiff. (*Id.* ¶ 16.)

On August 30, 2021, Plaintiff requested various documents from Defendant to verify the out-of-network benefit amount under the terms of Defendant's Plan, including the operative Summary Plan Description ("SPD"), any summaries of material modifications ("SMM"), and any documents advising beneficiaries of changes to the Plan. (*Id.* ¶ 34.) Defendant responded to this request on September 22, 2021 with five documents, including four SMMs for January 1, 2017; January 1, 2018; January 1, 2019; and January 1, 2020; as well as the SPD effective on January 1,

2017. (*Id.* ¶¶ 36–37.) According to the documents, material modifications occurred to the Plan on January 1, 2018, which allegedly reduced out-of-network benefits. (*Id.* ¶ 38.)

### B. Procedural History

Plaintiff filed its initial complaint on February 3, 2023. (ECF No. 1.) On June 19, 2023, Plaintiff filed an Amended Complaint. (ECF No. 10.) On July 19, 2023, Defendant filed a motion to dismiss Plaintiff's Amended Complaint. (ECF No. 11.) On August 22, 2023, Plaintiff filed an opposition to Defendant's motion to dismiss. (ECF No. 13.) Defendant replied to Plaintiff's opposition on September 11, 2023. (ECF No. 16.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* (alterations in original). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when

the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the Court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

4

While, as a general rule, the Court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### III.  DECISION

#### A.  Standing

Defendant argues Plaintiff's Amended Complaint does not plausibly allege standing as an assignee of patient M.K. (ECF No. 11.) Defendant argues that although the Complaint alleges patient M.K. assigned all rights and benefits under the Plan to Plaintiff, Plaintiff nonetheless asserts in paragraph 8 that the patient is entitled to the benefits sought under the Plan while paragraph 6 suggests Defendant could have permissibly reimbursed the patient for the Surgery. (ECF No. 11-1 at 9.) Moreover, paragraph 12 suggests the "medical provider" may choose an attorney to represent patient M.K. in any outstanding lawsuit, indicating the patient may still own the claim to benefits. (*Id.*) Defendant also argues the Complaint presses various claims on behalf of the patient, and improperly treats the checking of box 27 on the HCFA 1500 form as an independent proof of assignment. (*Id.* at 9–10.)

Plaintiff responds that the Complaint clearly alleges Plaintiff has standing as an assignee of patient M.K., as the Complaint states patient M.K. intended to transfer to Plaintiff her rights to

5

pursue and obtain payment from the insurance carrier, and for the insurance carrier to pay Plaintiff directly for the Surgery. (ECF No. 13 at 7–8.) Plaintiff also argues that its checking of box 27 on form HCFA 1500 constitutes further evidence of a valid assignment. (*Id.* at 8.) Plaintiff further asserts that Defendant waived its ability to contest Plaintiff's standing, as it made direct payment to Plaintiff of $4,106.10 for the patient's Surgery, thereby treating Plaintiff as patient's assignee for purposes of the Plan's benefits. (*Id.* at 8–10.)

Defendant replies that Plaintiff's opposition brief fails to address the points in its motion to dismiss and the Complaint fails to plead a valid assignment conforming to general contract law. (ECF No. 16 at 3–4.) Defendant reiterates that the checking of box 27 on the HCFA 1500 form is not dispositive of a valid assignment. (*Id.* at 4.)

Standing under ERISA § 502(a)(1)(B) is normally "limited to participants and beneficiaries." *BrainBuilders, LLC v. Aetna Life Ins. Co.*, Civ. A. No. 17-03626, 2024 WL 358152, at *5 (D.N.J. Jan. 31, 2024) (quoting *Prestige Inst. for Plastic Surgery, P.C. o/b/o S.A. v. Horizon Blue Cross Blue Shield of New Jersey*, Civ. A. No. 20-3733, 2021 WL 4206323, at *3 (D.N.J. Sept. 16, 2021)). However, "[h]ealthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015). One of the ways a provider gains standing under ERISA § 502(a) is when a patient assigns payment of insurance benefits to the provider. *Abramson v. Aetna Life Ins. Co.*, Civ. A. No. 22-05092, 2023 WL 3199198, at *5 (D.N.J. May 2, 2023). To plead a valid assignment of benefits under ERISA, courts in the Third Circuit

> have ruled that a healthcare provider ordinarily must identify a specific patient(s) who has assigned their claim(s) for benefits as well as factual matter that indicates that the provider is proceeding pursuant to an appropriate assignment, such as a copy of the

6

> assignment(s) at issue, the relevant language from the assignment(s), or some other evidence of the scope of the assignment(s).

*Minisohn Chiropractic & Acupuncture Ctr. v. Horizon Blue Cross Blue Shield of N.J.*, Civ. A. No. 23-01341, 2023 WL 8253088, at *3 (D.N.J. Nov. 29, 2023).

In assessing standing, courts distinguish between "facial" and "factual" attacks on the Complaint, with a "facial" attack arguing that the claims in the Complaint do not sufficiently allege standing, and a "factual" attack challenging the veracity of the facts in the Complaint alleging standing[1]. *Red Hawk Fire & Sec.* 449 F. Supp. 3d at 458. For "facial" attacks, the Court will assume the truth of the allegations in the Complaint, whereas for "factual" attacks, the Court will assess the truth of the pleadings in the Complaint by considering facts beyond the pleadings. *Id.*; *see also Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357–59 (3d Cir. 2014). Here, the Court finds Defendant's attack on Plaintiff's standing to be a "facial" attack, as Defendant's briefing focuses on the argument that "[t]he FAC's new paragraphs 9-12 do not create a plausible inference that the Patient ever perfected a valid assignment to [Plaintiff], particularly when read in conjunction with the rest of the pleading." (ECF No. 11-1 at 9.) Because Defendant focuses on the content of Plaintiff's pleading, the Court will apply the same standard of review as under Rule 12(b)(6), assuming the truth of Plaintiff's allegation and making all reasonable inferences in favor of

---

[1] A motion to dismiss based on standing is properly brought under Fed. R. Civ. P. 12(b)(1). *Red Hawk Fire & Sec. v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 458–59 (D.N.J. 2020). Here, Defendant only moves to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6). (ECF No. 11 at 1–2.) Therefore, Defendant's motion to dismiss for lack of standing is procedurally improper. However, because standing is a jurisdictional issue, the Court will consider the issue of standing *sua sponte*, despite Defendant's improper motion on the issue. *Wayne Land & Min. Grp., LLC v. Del. River Basin Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020) (finding courts are required to raise the issue of standing *sua sponte* based on their continuing obligation to ensure their jurisdiction).

Plaintiff. *See Red Hawk*, 449 F. Supp. 3d at 458; *Const. Party of Pa.*, 757 F.3d at 357–59; *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017).

Plaintiff has sufficiently alleged standing, as an assignment of payment to a medical provider is sufficient to grant that medical provider standing regarding issues pertaining to such payment. It is well established that "when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA § 502(a)." *N. Jersey Brain & Spine Ctr.*, 801 F.3d at 372; *see also Franco v. Conn. Gen. Life Ins. Co.*, 647 F. App'x 76, 82 (3d Cir. 2016) (holding that there need not be a "'complete and unequivocal transfer of the patient's right to benefits' in order to confer standing," rather, it was sufficient for standing to be derived from the assignment of the right to payment); *Zapiach v. Horizon Blue Cross Blue Shield of N.J.*, Civ. A. No. 15-5333, 2016 WL 796891, at *2–3 (D.N.J. Feb. 29, 2016) (holding that an assignment of benefits need not be complete to confer standing on the assignee, rather, it was sufficient for standing to be derived from the assignment of the right to payment). At this stage of pleading, the plaintiff only needs to present "some . . . evidence of the scope of the assignment(s)" to adequately assert standing. *Minisohn*, 2023 WL 8253088, at *3; *see also Ass'n of N.J. Chiropractors, Inc. v. Data ISight, Inc.*, Civ. A. No. 19-21973, 2022 WL 45141, at *3 (D.N.J. Jan. 5, 2022) (holding that plaintiff sufficiently alleged standing when they asserted they had valid assignments of benefits from patients in their complaint); *Genomind, Inc. v. UnitedHealth Grp., Inc.*, Civ. A. No. 21-373, 2021 WL 3929723, at *4 (E.D. Pa. Sept. 1, 2021) (finding plaintiff sufficiently alleged standing where the complaint alleged "[Plaintiff] has the legal right to assert the ERISA claims brought herein for all United ERISA Insureds' pursuant to a form signed by each insured patient which 'assign[ed] any payments from [the Insured's] insurance carrier to [Plaintiff]"). Here, Plaintiff's Complaint generally alleges "an assignment of benefits in

8

favor of Plaintiff assigning all [the patient's] rights, interests and benefits under her health and welfare plan to Plaintiff." (ECF No. 10 ¶ 9.) Plaintiff's Complaint also specifically quotes from the assignment of benefits, including a provision which directs "the insurance carrier and/or other insurance carrier to issue payment on [the patient's] behalf directly to the medical provider." (*Id.* ¶ 11.) Although Plaintiff's Complaint does not clearly allege that patient M.K. specifically assigned to Plaintiff the right to pursue or obtain payment from Defendant[2], Plaintiff's clear allegation of an assignment of benefits conferring all patient M.K.'s rights, interests, and benefits under the plan to Plaintiff, combined with the clear quotation assigning payment to the Plaintiff, sufficiently asserts Plaintiff's derivative standing at this stage of pleading.

For these reasons, Plaintiff's Complaint will not be dismissed for failure to adequately allege standing.

### B. Merits

Defendant argues Plaintiff has failed to state a plausible claim for benefits under 29 U.S.C. § 1132 (a)(1)(B), as it inaccurately argues Defendant was obliged to pay 100% of whatever an out-of-network provider deems as its usual and customary charge, whereas the SPD authorizes Defendant to calculate reimbursement for out-of-network services using a variety of different methods. (ECF No. 11-1 at 13–15.) Defendant claims the January 1, 2018 SMM further clarifies its discretion to determine covered expenses using a variety of methodologies based on its

---

[2] Plaintiff purports to quote a provision assigning to Plaintiff patient M.K.'s right to pursue and obtain payment from Defendant. (ECF No. 10 ¶ 10.) However, this quotation is unclear, stating she assigns "all of my rights and interests hereafter referred to as 'the medical provider' to pursue and obtain payment from the above-mentioned insurance carrier." (*Id.*) The language of the quotation is interrupted by "hereafter referred to as 'the medical provider,'" a clause not separated by commas, leading to the implausible conclusion that the term "the medical provider" is meant to refer to the patient's rights and interests to pursue payment. (*Id.*) Rather than make this conclusion, the Court instead assumes there is a typographical error in the Complaint.

9

discretion. (*Id.* at 16–17.) In any case, Defendant asserts Plaintiff has failed to plausibly allege its $160,000 charge for the surgery was comparable to the rates charged by other providers in the geographic area, as it does not identify any data confirming the amount to be competitive. (*Id.* at 17–18.) Defendant also argues the SPD does not override the January 1, 2018 SMM, and that, in any case, the two documents do not conflict. (*Id.* at 18–19.) Defendant disputes that the SMM "materially reduced" Plan benefits, instead arguing that it merely elaborates upon different payment methodologies Defendant can apply. (*Id.* at 20.) Moreover, Defendant argues the Court cannot reform the terms of the Plan in this suit by applying the SPD over the SMM, given that Plaintiff's suit is only to enforce the terms of the Plan. (*Id.* at 20–21.)

Plaintiff responds that its Complaint fully pleads a claim under ERISA § 502 (a)(1)(B) (29 U.S.C. § 1132 (a)(1)(B)) because it shows (1) Plaintiff properly made a claim for benefits, (2) Plaintiff exhausted the Plan's administrative appeals process, (3) Plaintiff was entitled to a particular benefit under the Plan's terms, and (4) Plaintiff was denied the benefit it was entitled to. (ECF No. 13 at 13–14.) Plaintiff also argues that the Complaint pleads the January 1, 2018 SMM is invalid as to the benefits in question as it did not comply with the notice requirements of CFR § 29 2520.104(d)1-3. (*Id.* at 14.) Plaintiff claims the Complaint specifically cited to a relevant provision of the SPD requiring payment of benefits based on "available date resources of competitive fees in the geographic area," which materially conflicts with the January 1, 2018 SMM. (*Id.* at 15–18.) Because adequate notice was not given of the January 1, 2018 SMM, the original terms of the SPD should govern. (*Id.* at 18.)

Defendant reiterates that the SPD indicates it may choose from a range of methods in determining the quantum of benefits provided for the services of out-of-network providers, meaning it had no obligation to pay Plaintiff's "usual and customary" charge. (ECF No. 16 at 6–

10

7.) Defendant also notes Plaintiff's Complaint does not contain any facts that $160,000 is a "competitive fee" for the service provided, or any information about how the fee was calculated. (*Id.* at 7–8.) Finally, Defendant argues there is no conflict between the January 1, 2018 SMM and SPD, and that, in any case, the Court cannot reform the terms of the Plan based on Plaintiff's argument. (*Id.* at 8–9.)

In order to state a claim under ERISA § 502 (a)(1)(B), the Plaintiff must identify the Plan provision that entitles it to the specific reimbursement it is seeking. *See Metro. Neurosurgery v. Aetna Life Ins. Co.*, Civ. A. No. 22-0083, 2023 WL 5274611, at *3–4 (D.N.J. Aug. 16, 2023) (holding it was insufficient for plaintiff merely to allege a difference in the amount it charged and the amount reimbursed as its "Amended Complaint does not point to any Plan provision from which the Court can infer that Plaintiff was entitled to the amount of reimbursement demanded for the out-of-network emergency medical services provided to the Patient" and "Plaintiff fails to allege that the billed amount falls into the 'Reasonable Charge' definition for the Plan"); *Gotham City Orthopedics, LLC v. Aetna, Inc.*, Civ. A. No. 20-19634, 2021 WL 9667963, at *9 (D.N.J. Sept. 10, 2021) ("[Plaintiff] must point to the specific plan provisions that, in its view, plausibly entitle it to a greater sum of money."); *Prestige Inst. For Plastic Surgery v. Keystone Healthplan E.*, Civ. A. No. 20-496, 2020 WL 7022668, at *7 (D.N.J. Nov. 30, 2020) (quoting *Univ. Spine Ctr. v. Anthem Blue Cross of California*, Civ. A. No. 19-12639, 2020 WL 814181, at *5 (D.N.J. Feb. 18, 2020)) ("It is the Plaintiff's burden of proof to have the plan documents and cite to specific plan provisions when filing a civil complaint to obtain ERISA benefits.") The Plaintiff must, therefore, provide sufficient information to show that the claimed reimbursement was mandated by the terms of the Plan, both by citing to a specific provision, and showing how its claimed reimbursement falls under the provision. *See Metro. Neurosurgery*, 2023 WL 5274611, at *3–4

(holding it was insufficient for plaintiff merely to allege a difference in the amount it charged and amount reimbursed as "[t]he Amended Complaint does not point to any Plan provision from which the Court can infer that Plaintiff was entitled to the amount of reimbursement demanded for the out-of-network emergency medical services provided to the Patient" and "Plaintiff fails to allege that the billed amount falls into the 'Reasonable Charge' definition for the Plan"); *Gotham City Orthopedics, LLC*, 2021 WL 9667963, at *9 ("[Plaintiff] must point to the specific plan provisions that, in its view, plausibly entitle it to a greater sum of money.").

Here, although Plaintiff has identified a specific provision of the SPD which purportedly entitles it to relief, it has failed to plead how its demand for reimbursement is covered under the terms of the provision. Plaintiff identifies a provision under the "Eligible Expenses" section of the SPD which states a beneficiary is entitled to reimbursement based on a calculation of "eligible expenses" from "available date resources of competitive fees in th[e] geographic area." (ECF No. 10 ¶ 49.) Plaintiff then goes on to state that its charge for the Surgery is a "usual and customary charge amount . . . similar to other provider[]s in the provider[']s geographic area pursuant to numerous third-party resources and public available data bases." (*Id.* ¶ 51.) Therefore, Plaintiff alleges "[t]he provider's usual and customary charge for the services provided to M.K. on July 17, 2020 is $160,000.00 and represents the 'competitive fees in that geographic area.'" (*Id.* ¶ 52.) Plaintiff does not specify any data or data source suggesting its fees are similar to other providers in the geographic area, meaning its allegation is not sufficiently substantiated to survive dismissal. The Complaint's allegation that Plaintiff's fees represent "competitive fees" in the geographic area is almost wholly conclusory as it is premised on a bare statement that such fees are competitive based on unnamed sources. Although "detailed factual allegations" are not required at this stage, Plaintiff's Complaint does not have sufficient "factual enhancements" to adequately plead

Plaintiff's entitlement to relief under the cited Plan provision. *Ashcroft*, 556 U.S. at 678. Therefore, because Plaintiff has not adequately stated its entitlement to reimbursement under the Plan terms, Plaintiff has failed to state a claim under ERISA § 502 (a)(1)(B). *See Metro. Neurosurgery*, 2023 WL 5274611, at *3–4 (dismissing complaint in part because "Plaintiff fails to allege that the billed amount falls into the 'Reasonable Charge' definition for the Plan"); *Long Island Neurological Assocs., P.C. v. Empire Blue Cross Blue Shield*, Civ. A. No. 18-3963, 2020 WL 1452521, at *5 (E.D.N.Y. Mar. 2, 2020) (finding that a plan's payment for out-of-network providers "would require payment of the lesser of defined 'allowable charges' under the Plan. That payment might be what the Plan determines to be the usual charge for services rendered. It would not be, as Plaintiff argues, whatever amount is actually billed."); *cf. Methodist Hosp. of S. Cal. v. Blue Cross of Cal.*, Civ. A. No. 09-5612, 2011 WL 13186107, at *4 (C.D. Cal. Mar. 8, 2011) (holding that an allegation of underpayment of benefits under ERISA was sufficiently pled because the plaintiff specifically alleged that rather than evaluating whether plaintiff's billed amount was comparable to other hospitals in the region per the terms of the plan, "Defendants determine the amount they will pay by multiplying the Hospital's cost-to-charge ratio by a pre-set percentage and then applying that to the Hospital's charges, or by multiplying the Medicare and Medicaid rates by a factor, or by using the flawed Ingenix Database to establish the UCR").

Accordingly, Defendant's Motion to Dismiss Plaintiff's Complaint is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**.

### C. Leave to Amend

Defendant argues Plaintiff should be denied leave to amend its Complaint a second time, as Plaintiff has already amended its Complaint once. (ECF No. 11-1 at 21.)

Plaintiff argues that any deficiencies in its pleading would be issues of technical pleading rather than substantive issues with its claim, and there is no legitimate basis to argue amendment would be futile or Defendant would be prejudiced by further amendment. (ECF No. 13 at 19.)

Defendant responds by noting Plaintiff has not submitted a proper motion to amend under Fed. R. Civ. P. 15(a)(2), making Plaintiff's request for leave to amend in its opposition brief procedurally improper. (ECF No. 16 at 9–10.) Defendant also argues that despite Plaintiff's opportunity to amend the Complaint once, Plaintiff still fails to adequately allege standing or a claim for benefits, noting that Plaintiff's opposition brief merely repeats the allegations in its Complaint, thereby showing Plaintiff has no further information to use in an amendment. (*Id.* at 10.)

The Court grants Plaintiff leave to amend its Complaint as, based on the deficiencies identified in this Opinion, it would not be futile for Plaintiff to amend its Complaint, and there is no apparent equitable reason to deny leave to amend. Courts in this circuit routinely grant plaintiffs leave to amend a complaint as part of a motion to dismiss judgment, without the need for a further motion to amend under Fed. R. Civ. P. 15(a)(2). *See Phillips*, 515 F.3d at 236 (quoting *Shane v. Fauver,* 213 F.3d 113, 116 (3d Cir. 2000)) (when dismissing a complaint for failure to state a claim "we suggest that district judges expressly state, where appropriate, that the plaintiff has leave to amend within a specified period of time"); *Habayeb v. Butler*, Civ. A. No. 15-5107, 2016 WL 1242763, at *8 (D.N.J. Mar. 29, 2016) (granting plaintiff leave to amend complaint on counts dismissed without prejudice without separate motion to amend under Fed. R. Civ. P. 15(a)(2)); *Boldman v. Wal-Mart Stores, Inc.*, Civ. A. No. 16-4, 2016 WL 4418219, at *1 (D.N.J. Aug. 17, 2016) (noting that "the Court granted Defendants' motion and dismissed the complaint without prejudice, but gave Plaintiffs leave to amend the complaint within thirty days"). The Federal Rules

of Civil Procedure generally require the Court to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15. Here, amendment would not be futile as the Plaintiff could provide additional factual content which would cure the deficiencies in the Complaint. *See Munenzon v. Peter Advisors, LLC*, 553 F. Supp. 3d 187, 210 (D.N.J. 2021); *see also United States ex rel. Petratos v. Genentech, Inc.*, Civ. A. No. 11-3691, 2014 WL 7331945, at *2 (D.N.J. Dec. 18, 2014) (stating that "within the Third Circuit, even when a complaint is vulnerable to Rule 12(b)(6) dismissal, the district court should allow the party a curative amendment, unless the amendment would be futile or inequitable"); *Bankwell Bank v. Bray Ent., Inc.*, Civ. A. No. 20-49, 2021 WL 211583, at *3 (D.N.J. Jan. 21, 2021) (holding that amendment of fraudulent transfer claims would not be futile where plaintiff had already contended it had certain evidence which could support an inference of fraudulent transfer, as the court found this evidence could ground a valid claim if properly pled). The Court notes that Plaintiff claims that "numerous third party resources and public available data bases" demonstrate its fees are comparable to other providers in its geographic area. (ECF No. 10 ¶ 51.) Given that it appears Plaintiff has additional information which it could add to an amended complaint, the Court will grant Plaintiff leave to amend its Complaint a second time.

### IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 11) Plaintiff's Amended Complaint (ECF No. 10) is **GRANTED**. Plaintiff's Amended Complaint (ECF No. 10) is **DISMISSED WITHOUT PREJUDICE** with leave to amend.

Date: March 12, 2024                               */s/ Brian R. Martinotti*_____
                                                   **HON. BRIAN R. MARTINOTTI**
                                                   **UNITED STATES DISTRICT JUDGE**