<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATLANTIC SPINE CENTER, LLC, on the assignment of M.K., <br><br> Plaintiff, <br><br> v. <br><br> DELOITTE, LLP GROUP INSURANCE PLAN *et al.*, <br><br> Defendants. | Case No. 2:23-cv-00614 (BRM) (JBC) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is a Motion (ECF No. 26) by Defendant Deloitte, LLP Group Insurance Plan ("Deloitte") to Dismiss Plaintiff Atlantic Spine Center, LLC's ("Atlantic Spine") Second Amended Complaint (ECF No. 19) pursuant to Federal Rule of Civil Procedure 12(b)(6). On July 22, 2024, Atlantic Spine filed an opposition (ECF No. 29), and on August 12, 2024, Deloitte filed a reply (ECF No. 32). Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 26) is **DENIED**.

**I.    BACKGROUND**

The factual and procedural backgrounds of this matter are known to the parties and were previously recounted in depth by the Court in its prior opinion granting Deloitte's Motion to Dismiss Atlantic Spine's Amended Complaint without prejudice and with leave to amend. (*See* ECF Nos. 17–18.) Accordingly, the Court will briefly recount only the factual background and

1

procedural history associated with this motion. Moreover, for purposes of this Motion, the Court accepts the factual allegations in the complaint as true and draws all inferences in the light most favorable to the plaintiff. *See Philips v. Cnty. Of Alleghany*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### A. Factual Background

Atlantic Spine is a medical practice in New Jersey authorized to practice medicine and surgery. (Second Am. Compl. (ECF No. 19) ¶ 1.) Deloitte is a Plan Sponsor and/or Plan Administrator of self-funded employee health and welfare benefits plans. (*Id.* ¶ 3.) On or about July 17, 2020, Atlantic Spine conducted a lumbar spine surgery on M.K., a patient domiciled in New Jersey who is a beneficiary, member, and/or insured of one of Deloitte's health and welfare benefits plans. (*Id.* ¶ 2, 7–8.) Prior to the procedure, on or about June 18, 2020, the patient executed an assignment of benefits in favor of Atlantic Spine assigning all rights, interests, and benefits under the health and welfare plan. (*Id.* ¶ 9.) Atlantic Spine sent claim forms to Deloitte on or about July 26, 2020, requesting reimbursement of the surgical services provided to the patient in the amount of $160,000. (*Id.* ¶ 14, 51.) In so doing, Atlantic Spine cited the "Eligible Expenses" section of the Summary Plan Description (the "Plan") which states: "[f]or covered services other than pharmaceutical products, eligible expenses are determined based on available data resources of competitive fees in that geographic area."[1] (*Id.* ¶ 22.) Deloitte sent payment in

---

[1] After the patient, and by extension Atlantic Spine as assignee, enrolled in the Plan, Deloitte executed a number of modifications, including a "2018 Summary Material Modification" document, which discusses, among other things, relevant expenses and reimbursement policies. (*See* ECF No. 26 at 17.) Atlantic Spine argues this document is inapplicable to the facts of this litigation because Deloitte did not satisfy the notice requirement under 29 CFR § 2520.104b-3(d)(1)–(3). (ECF No. 19 at 12.) Deloitte disagrees but contends the issue is ultimately immaterial because, in its view, neither the modification nor the original Plan require the use of

the amount of $4,106.10 directly to Atlantic Spine for the services rendered to the patient on or about April 26, 2021. (*Id.* ¶ 16.) Believing itself to have been under-reimbursed for services rendered in the amount of $155,893.90, Atlantic Spine engaged in and exhausted Deloitte's internal applicable administrative appeal procedures resulting in a continued failure to reimburse the allegedly proper amount. (*Id.* ¶ 17–18.)

### B. Procedural History

Atlantic Spine filed the present action pursuant to 29 U.S.C. § 1132 (a)(1)(b) on February 3, 2023. (Compl. (ECF No. 1) at 4.) Deloitte filed a Motion to Dismiss the Complaint on April 10, 2023. (ECF No. 5.) In a stipulation and order, the parties agreed to administratively terminate Deloitte's motion to dismiss and grant Atlantic Spine leave to file an amended complaint. (ECF No. 9.) On June 19, 2023, Atlantic Spine filed an Amended Complaint (ECF No. 10), which Deloitte moved to dismiss on July 19, 2023, arguing Atlantic Spine failed to plausibly allege standing, and the Complaint failed to state a plausible claim for benefits (ECF No. 10 at 11).

In an opinion issued on March 12, 2024, this Court found Atlantic Spine sufficiently alleged standing to sue for benefits but ultimately granted Deloitte's motion to dismiss with leave to amend for failure to adequately state an entitlement to reimbursement under the plan terms. (ECF No. 17 at 9, 13.) Following party stipulations and letters extending response deadlines (ECF No. 21) and requesting a pre-motion conference (ECF Nos. 22, 24), Deloitte filed the present Motion to Dismiss the Second Amended Complaint on June 13, 2024 (ECF No. 26). Atlantic Spine submitted a Brief in Opposition (ECF No. 29) on July 22, 2024, and Deloitte filed its Reply Brief (ECF No. 32) on August 12, 2024.

---

any particular method for calculating out-of-network benefits. (ECF No. 26 at 11.) Going forward, the parties can develop the record on this issue through discovery.

## II.     LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228 ("[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545 (alterations in original). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, assuming factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements

4

of a cause of action. *Id.* (citations omitted). In assessing plausibility, the Court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. *Iqbal*, 556 U.S. at 677. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the Court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### III. DECISION

Deloitte moves to dismiss Atlantic Spine's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted. (ECF No. 26.) It argues the Second Amended Complaint still fails to state a plausible claim because it does not tie the benefits demand of the $155,893.90 balance to one or more terms in the out-of-network benefits plan. (*Id.* at 13–14.) Specifically, Deloitte contends that merely providing two examples of databases—namely, the FAIR Health and Optum Fee Analyzer indices—that show the demand is "competitive" does not obligate Deloitte to pay that amount (*id.* at 16–22); at most, Deloitte concedes, these represent two among many data points to which it or the claims administrator may refer in determining the relevant out-of-network benefit (*id.* at 18–19). Deloitte further contends the Plan has been modified in 2018 by a "Summary of Material Modifications" ("SMM") document which lists several methodologies that may be used in determining reimbursement amounts and asserts that, "[r]egardless of whether the Court looks to the [Plan] or the SMM, nothing requires [Deloitte or its claims administrator] to measure out-of-network reimbursement by Fair Health or Optum." (*Id.*)

In response, Atlantic Spine contends it has satisfied pleading requirements by plausibly alleging it is entitled to relief under the Employee Retirement Income Security Program ("ERISA") § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). (ECF No. 29, at 8–18.) First, it underscores the Supreme Court's explanation that "[t]he plausibility standard is not akin to a probability standard," meaning a complaint need only allege enough facts to show it *might* be entitled to relief to be well-pleaded. (*Id.* at 10 (quoting *Iqbal*, 556 U.S. at 678).) Atlantic Spine

emphasizes a complaint may survive a motion to dismiss "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." (*Id.* (quoting *Twombly*, 550 U.S. at 556).) Second, Atlantic Spine argues it sufficiently pled each element of a claim under ERISA § 502(a)(1)(B). Specifically, it highlights paragraphs 42–54 of the Second Amended Complaint, which refer to the "Eligible Expenses" section of the original Plan document and connect its alleged entitlement to this Plan term. (*Id.* at 11–12.) Furthermore, Atlantic Spine argues any controversy over which version of the Plan was active at the time of the procedure is rendered moot by Deloitte's failure to adhere to the notice requirements of 29 CFR § 2520.104b-3(d)(1)–(3). (*Id.* at 12.) Atlantic Spine contends Deloitte's failure to provide notice prevents any plan modifications from taking legal effect, leaving the original policy containing the "Eligible Expenses" term as the only relevant Plan document. (*Id.*)

ERISA is a "comprehensive statute for the regulation of employee benefits plans[,]" *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 573 (3d Cir. 2006) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004)), created to ensure employee benefits plans were well managed and participants were not left "shortchanged," *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 225 (3d Cir. 2020). Section 502(a) is a civil enforcement provision granting a private right of action under the statute. 29 U.S.C. § 1132(a). Under Section 502(a), a "participant or beneficiary" has standing to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life and Health Ins. Co.*, Civ. A. No. 17-4599, 2018 WL 5630030, at *3 (D.N.J. Oct. 31, 2018) (quoting 29 U.S.C. § 1132(a)(1)(B)). A "participant" is defined as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any

7

type from an employee benefit plan[,]" whereas a "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(7), (8). Additionally, the right to bring a civil action under ERISA extends to healthcare providers who are not participants or beneficiaries in their own right but "obtain derivate standing by assignment from a plan participant or beneficiary." *Atl. Plastic*, 2018 WL 5630030 at *3 (quoting *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015)). While "ERISA itself is silent on the issue of derivative standing and assignments," the Third Circuit has held "as a matter of federal common law, when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA [Section] 502(a)." *Id.*

To prevail under Section 502(a)(1)(B), a plaintiff must establish his or her "right to benefits that is legally enforceable against the plan." *Atl. Plastic*, 2018 WL 5630030 at *7 (quoting *Hooven*, 465 F.3d at 574). As the case law clearly establishes, "[o]nly the words of the plan itself can create an entitlement to benefits[;]" thus, plaintiffs must point to specific plan provisions from which a court can infer a legally enforceable right to survive a motion to dismiss at the pleading stage. *Metro. Neurosurgery v. Aetna Life Ins. Co.*, Civ. A. No. 22-00083, 2024 WL 4345287, at *5 (D.N.J. Sept. 30, 2024). "A vague [and conclusory] pleading that benefits are due is not sufficient." *Id.* In sum, plaintiffs must tie allegations of ERISA violations to specific plan provisions, and courts have routinely granted motions to dismiss in cases in which a plaintiff has failed to do so. *See id.*, at *6; *Atl. Plastic*, 2018 WL 5630030 at *10; *Gotham City Orthopedics, LLC v. Cigna Health & Life Ins. Co.*, Civ. A. No. 21-1703, 2022 WL 2116864, at *2 (D.N.J. June 13, 2022); *K.S. v. Thales USA, Inc.*, Civ. A. No. 3:17-07489, 2019 WL 1895064, at *6 (D.N.J. Apr. 29, 2019).

In order to state a claim under ERISA § 502(a)(1)(B), Atlantic Spine must identify the Plan provision that entitles it to the specific reimbursement it is seeking. *See Metro. Neurosurgery v. Aetna Life Ins. Co.*, Civ. A. No. 22-0083, 2023 WL 5274611, at *3–4 (D.N.J. Aug. 16, 2023) (holding it insufficient to merely allege a difference in the amount charged and amount reimbursed as plaintiff's "Amended Complaint does not point to any Plan provision from which the Court can infer" an entitlement to the amount demanded, and "Plaintiff fails to allege that the billed amount falls into the 'Reasonable Charge' definition for the Plan"). In its Second Amended Complaint, Atlantic Spine had to cure the only remaining deficiency identified by the Court—that is, to specify any data source suggesting its fees are similar to other providers in the geographic area, and thereby show how its demand for reimbursement is covered under the terms of the plan—with enough facts plausibly showing additional benefits are due. (ECF No. 17 at 12.)

The Court finds it has adequately done so. Atlantic Spine now points to two illustrative data sources—namely, the FAIR Health and Optum Fee Analyzer indices—indicating Deloitte's reimbursement fell far below the reasonable and competitive fees charged in the geographic area. (ECF No. 19 ¶¶ 48–52.) Atlantic Spine describes FAIR Health as "manag[ing] the nation's largest database of privately billed health insurance claims[,]" alleges the $160,000 provider's fee for the services provided to the patient in this case is considered "competitive" in the FAIR Health database, and contends the $4,106.10 reimbursement amount in this case "does not represent 'competitive fees'" in FAIR Health. (*Id.* at ¶¶ 49, 51–52) Similarly, Atlantic Spine describes the Optum Fee Analyzer as "provid[ing] access to relative and actual physician charge data for a specific geographic area as well as national charge data[,]" alleges the $160,000 provider's fee charged to the patient here represents "the 'competitive fee[]'" in the Optum Fee Analyzer index, and further contends the reimbursement amount of $4,106.10 by Deloitte is not

9

"competitive" as evidenced by Optum Fee Analyzer (*Id.* at ¶¶ 50–52) Taking the allegations as true, the Court finds Atlantic Spine now meets its pleading burden showing additional benefits are due because Deloitte did not reimburse Atlantic Spine at a reasonable rate as compared to "competitive fees in that geographic area" contrary to the "Eligible Expenses" term of the Plan. (ECF No. 19 ¶ 22.) Taking these and other factual allegations in the Second Amended Complaint as true, Atlantic Spine has "raise[d] a right to relief above the speculative level." *Iqbal*, 550 U.S. at 1964–65.

While Deloitte may later demonstrate the indices provided by Plaintiff are unreliable or otherwise inapplicable to the case, these are issues of fact more appropriate at summary judgment (or, if the issue is genuinely in dispute, at trial) once discovery is underway. *See* Fed. R. Civ. P. 56(a) (noting that summary judgement is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law"); *Seidman v. Minn. Mut. Life. Ins. Co.*, 40 F. Supp. 2d 590, 596 (E.D. Pa. 1997) ("While an allegation of malfeasance may be sufficient for the more lenient requirements of a motion to dismiss, Seidman must present *evidence* . . . to survive a motion for summary judgement.") (emphasis added); *Lites v. Great Am. Ins. Co.*, No. Civ. A. 00-CV-525, 2000 WL 875698, at *3 (E.D. Pa. June 23, 2000) ("The procedural difference between a motion to dismiss and a motion for summary judgement is the standard to be applied in addressing the respective arguments. In deciding a motion to dismiss, the court must accept all allegations in the complaint as true," whereas *evidence* to substantiate allegations is needed for summary judgement motions); *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker,* 139 F.3d 380, 383 n.2 (3d Cir. 1998) ("If the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's

evidence is insufficient to carry that burden.'")); *Moses v. Wayfair LLC*, Civ. A. No. 20-5278, 2024 WL 4100412, at *7 (D.N.J. Sept. 6, 2024) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999) ("Summary judgment 'is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact.").

Deloitte relies on two cases to support its argument that the two indices referenced in the Second Amended Complaint are insufficient to allege an entitlement to benefits under the Plan. (ECF No. 26 at 20.) In *Advanced Orthopedics & Sports Med. Inst. ex rel. MS v. Anthem Blue Cross Life & Health Ins. Co. ("Advanced I")*, a professional practice orthopedics group that performed spinal procedures on a patient sued a healthcare insurance company and ERISA plan claims administrator for allegedly under-reimbursing it under the terms of the plan. Civ. A. No. 20-13243, 2021 U.S. Dist. LEXIS 200266 at *2–5 (D.N.J. Oct. 18, 2021). The orthopedics group cited a plan provision that contained five possible methods for determining the relevant reimbursement amount, but the group did not allege which method was actually used. *Id.* at *25. The Court therefore found the plaintiff failed to allege which specific term was violated, when or how a term was violated, or to what amount of money plaintiff was allegedly entitled, and thus failed to state a cognizable claim. *Id.* at *26. In *Advanced Orthopedics & Sports Med. Inst. P.C. v. Horizon Healthcare Servs. ("Advanced II")*, the same orthopedics group performed back surgery on a different patient and sued for alleged under-reimbursement pursuant to that plan's terms, which also listed multiple pricing methods for reimbursement. Civ. A. No. 21-12397, 2022 U.S. Dist. LEXIS 61675, at *12–13 (D.N.J. Apr. 1, 2022). There, the Court again found the orthopedics group failed to state a claim because it did not specify which specific portion of the plan was violated. *Id.*

The present case is distinguishable from both *Advanced I* and *II* because Deloitte's plan limits the determination of eligible expenses to a single factor—namely, "available data resources of competitive fees in that geographic area." (ECF No. 19 ¶ 22.) Unlike *Advance I* or *Advance II*, here, "a plain reading of the Plan itself" leaves no confusion about how price is to be calculated. *Advanced II*, 2022 U.S. Dist. LEXIS 61675, at *12–13. Indeed, Deloitte concedes the FAIR Health and Optum Fee Analyzer indices represent two possible sources of data. (ECF No. 26 at 18–19.) It would therefore be reasonable to use either data source in determining the reimbursement amount. As the case progresses through discovery, Deloitte may show it does not actually use these sources. If so, it would, at that point, be appropriate to challenge the veracity of Atlantic Spine's allegations to the contrary through a motion for summary judgment. However, given the Court must take the allegations in the Complaint as true and may not consider any "[f]actual claims and assertions raised by a defendant" in assessing plausibility at the motion to dismiss stage, Atlantic Spine necessarily survives a dismissal as it has now cured all pleading deficiencies. *Doe v. Princeton Univ.*, 30 F.4th at 345.

The Court disagrees with Deloitte's characterization of Atlantic Spine's Second Amended Complaint as suggesting Deloitte is required to pay the bill in accordance with the FAIR Health or Optum Fee Analyzer indices. (ECF No. 32 at 5.) In its Opinion on Deloitte's prior Motion to Dismiss, this Court granted Atlantic Spine leave to amend its claim with "sufficient 'factual enhancements'" to show its fee was competitive for the geographic area and that it is owed a balance based on such fees. (ECF No. 17 at 12–13 (quoting *Iqbal*, 556 U.S. at 678) (emphasis omitted).) In providing these indices in the Second Amended Complaint, Atlantic Spine did exactly what it was instructed to do: cure the prior Complaint's factual deficiency and thereby meet its pleading burden under Fed R. Civ. P. 8. What exactly Deloitte owes, if anything, is a

question of fact not properly addressed on a motion to dismiss. *See Seidman*, 40 F. Supp. 2d at 296 (explaining that while a motion to dismiss is decided on the sufficiency of allegations in the pleadings, a summary judgement motion requires evidence and is thus more appropriate for addressing questions of fact).

Accordingly, the Court finds Atlantic Spine has plausibly stated a claim for relief and thus survives the Motion to Dismiss under Rule 12(b)(6).

### IV. CONCLUSION

For the reasons set forth above, and for good cause having been shown, Deloitte's Motion to Dismiss Atlantic Spine's Second Amended Complaint (ECF No. 19) is **DENIED**.

Date: November 5, 2024                    /s/ *Brian R. Martinotti*
                                          **HON. BRIAN R. MARTINOTTI**
                                          **UNITED STATES DISTRICT JUDGE**